STATE of Maine

v.

Charles JACQUES.

Supreme Judicial Court of Maine.

Argued Nov. 18, 1987.
Decided Feb. 10, 1988.

---

Paul Aranson, Dist. Atty., Laurence Gardner, Deputy Dist. Atty., Stephen Bither, Law Student (orally), Portland, for State.

Dennis Levandoski (orally), Kettle, Carter, Henegar, Levandoski & Anderson, Portland, for defendant.

Before NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

GLASSMAN, Justice.

Charles Jacques appeals from the judgment of the Superior Court, Cumberland County, entered on a jury verdict finding him guilty of two counts of burglary, 17–A M.R.S.A. § 401 (1983 & Supp.1987), and one count of criminal mischief, 17–A M.R.S.A. § 806 (1983). Jacques raises five issues for our consideration. We reject his contentions that he was denied a fair trial by prosecutorial misconduct, that the evidence is insufficient to support the convictions, and that the court erred in its instructions on criminal mischief and in denying his motions for the court's recusal and for a new trial. Accordingly, we affirm the

conviction. We agree with Jacques, however, that the court erred in its sentencing procedures and, therefore, vacate the imposed sentence and remand for sentencing by a different justice.

## I

In February 1986 an indictment was returned against Jacques charging him with burglary and criminal mischief at 26 Dow Street and burglary at 10 Dow Street, Portland. The record discloses that the jury would have been warranted in finding the following facts. On December 1, 1985 a 26 Dow Street resident was awakened at approximately 4:30 a.m. by the sound of an intruder in her apartment. She thought it was one of her absent roommates returning late and called out the roommate's name. At this point the intruder poked his head through her bedroom door, stared at her for a few seconds, and then shined a flashlight in her face. When she screamed, the intruder left. When she tried to call the police, she discovered that the cord of the telephone on her bed as well as the cord of her roommate's telephone had been removed. She later identified Jacques as the intruder.

Approximately three weeks later, on December 23, a resident at 10 Dow Street was awakened at 4:00 a.m. by loud footsteps approaching and entering her apartment. She got up from her bed, rattled her bedroom doorknob, and the intruder left. As she moved out into the hallway, she saw broken glass from the door and clumps of snow inside her apartment leading toward her telephone. She checked her telephone, and seeing it was still plugged in, called the police. Because of the fresh snow that night, the police were able to follow unbroken tracks from her apartment to the point in the street where Jacques was apprehended.

On June 26, 1986 the jury found Jacques guilty on both counts of burglary and the count of criminal mischief. Jacques was

released on bail pending sentencing. On July 24, 1986, Jacques was charged with four counts of harassment by telephone of a Scarborough resident and his bail was revoked. After a hearing, the trial court denied Jacques' motion that the court recuse itself from hearing Jacques' motion for a new trial and his motion for a new trial on the ground of newly discovered psychiatric evidence. On October 16, 1986, immediately following Jacques' entry of a plea of not guilty and not guilty by reason of insanity to the charges of telephone harassment, the sentencing hearing was held on the burglary and criminal mischief convictions. Jacques appeals from the judgment entered on these convictions.

## II

### A. *Prosecutorial Misconduct*

Because Jacques did not object or request any corrective instruction at trial, we review his contention of prosecutorial misconduct only for obvious error. M.R. Crim.P. 52(b). Our careful review of the record discloses that neither the testimony inadvertently elicited by the State in response to a proper question asked its witness nor the remarks of the State in its closing argument, if error, rise to that level of prejudice to Jacques that would require this court to vacate the judgments. *State v. Dana*, 406 A.2d 83, 86 (Me.1979); *see also State v. True*, 438 A.2d 460, 467, 468 (Me.1981) (discussion of obvious error standard used when inadmissible hearsay admitted without objection).

### B. *Sufficiency of the Evidence*

Jacques claims the evidence was insufficient to support his conviction of two counts of burglary [1] and one count of criminal mischief. We disagree. "When, as here, a defendant challenges the sufficiency of the evidence, we will set the conviction aside only if no trier of fact rationally could have found the elements of the crime beyond a reasonable doubt." *State v. Brewer*, 505 A.2d 774, 775 (Me.1985). We

---

1. 17–A M.R.S.A. § 401(1) defines burglary as follows:

A person is guilty of burglary if he enters or surreptitiously remains in a structure, knowing that he is not licensed or privileged to do so, with the intent to commit a crime therein.

have repeatedly stated that "circumstantial evidence is no less conclusive than direct evidence in supporting a conviction." *State v. Kenney*, 534 A.2d 681 (Me.1987). There is ample evidence in this case from which the jury rationally could have found beyond a reasonable doubt that Jacques entered the dwellings at 26 Dow Street and 10 Dow Street knowing he was not licensed or privileged to do so. There is also ample evidence to support the jury's finding that Jacques entered 26 Dow Street with the intent to commit and that he did commit the crime of criminal mischief. We find no merit in Jacques' argument that because there was no evidence that the telephone at 10 Dow Street had been damaged, destroyed, or tampered with, the State had failed to prove that Jacques had entered those premises with the intent to commit a crime as required by 17–A M.R.S.A. § 401. The jury heard evidence that there were clumps of snow inside the apartment leading to the telephone and that because of the fresh snow the police were able to follow unbroken tracks from the apartment to the point where Jacques was apprehended. In addition, the jury heard evidence that approximately three weeks prior to Jacques' entry at 10 Dow Street the telephones at 26 Dow Street had been disconnected and the cords removed after Jacques was seen at that residence. This evidence was sufficient for the jury rationally to have found beyond a reasonable doubt that Jacques' unlicensed and unprivileged entry into 10 Dow Street was with the intent to commit the crime of criminal mischief. *See State v. DeLong*, 505 A.2d 803, 805 (Me.1986).

### C. *Instructions*

On appeal, Jacques for the first time objects to the trial court's instructions to the jury on criminal mischief. He contends that because there was no evidence to support his conviction of criminal mischief pursuant to 17–A M.R.S.A. § 806(1)(B), the court erroneously instructed the jury it could find Jacques guilty under either section 806(1)(A) or (1)(B).[2]

∎ We have frequently stated that when there is no objection to instructions at trial, we review the instructions pursuant to M.R.Crim.P. 52(b) for obvious error. The standard requires a "penetrating inspection of all the circumstances of the trial to determine whether there exists 'a seriously prejudicial error tending to produce manifest injustice.'" *State v. Walker*, 512 A.2d 354, 355 (Me.1986) (citations omitted); *State v. Michaud*, 473 A.2d 399, 404 (Me.1984).

∎ The language in the indictment charging Jacques with criminal mischief tracked the language of section 806(1)(A). Both by his not guilty plea and his testimony at trial, Jacques categorically denied this charge. Our careful review of the record discloses that the only evidence before the jury in connection with this charge was that: in the early morning hours of December 1, 1985, the telephone on the bed of the resident at 26 Dow Street had been in working order; after Jacques had been seen in the premises at 26 Dow Street, both the telephone owned by and on the bed of that resident, and the telephone owned by her roommate had been unplugged and the cords removed, thereby impairing their use. Although this evidence properly warranted only the instruction of criminal mischief as defined in section 806(1)(A), and not the additional instruction containing the alter-

**2.** 17–A M.R.S.A. § 806(1)(A) and (B) reads as follows:

  1. A person is guilty of criminal mischief if, intentionally or knowingly, he:
  A. Damages or destroys the property of another, having no reasonable ground to believe that he has a right to do so; damages or destroys property to enable any person to collect insurance proceeds for the loss caused; or tampers with the property of another, having no reasonable grounds to believe that he

has the right to do so, and thereby impairs the use of that property; or
  B. Damages, destroys or tampers with property of a law enforcement agency, fire department, or supplies of gas, electric, steam, water, transportation, sanitation or communication services to the public, having no reasonable ground to believe that he has a right to do so, and by such conduct recklessly creates a risk of interruption or impairment of services rendered to the public.

native definition as set forth in section 806(1)(B), on this record we cannot say that the alleged error "so tainted the proceeding as virtually to deprive the aggrieved party of a fair trial." *State v. Pierce*, 438 A.2d 247, 252 (Me.1981). Accordingly, we hold that inclusion of the language of section 806(1)(B) in the court's instruction to the jury did not rise to the level of obvious error.

## D. *Motion for Recusal*

■ We find no merit in Jacques' contention that he was prejudiced by the trial court's denial of his motion requesting that court to recuse itself from hearing Jacques' motion for a new trial. Recusal is a matter within the broad discretion of the court. We have previously stated that "No Justice of the Superior Court ought disqualify himself from conducting the business of the Court, for frivolous reasons." *State v. Aubut*, 261 A.2d 48, 51 (Me.1970). In the instant case, Jacques' complaint of prejudice is not supported by any evidence and is not justified.

## E. *Motion for New Trial*

Jacques contends that the trial court erroneously denied his motion for a new trial. We disagree. Jacques moved for a new trial on the ground that newly discovered psychiatric evaluations demonstrated that he lacked criminal responsibility at the time of the alleged commission of the charged offenses. The trial court found that "the exercise of reasonable pre-trial due diligence could have revealed the information which is now put forward as newly discovered evidence" and denied the motion.

■ A motion for new trial based on newly discovered evidence must be supported by convincing evidence of all elements of a five-point test.[3] We will disturb the trial court's finding only if it is clearly erroneous. *State v. Marshall*, 491 A.2d 554, 559 (Me.1985), *cert. denied*, 474 U.S.

908, 106 S.Ct. 277, 88 L.Ed.2d 242 (1985). We have previously stated that due diligence is not established if a defendant misses the significance of facts available to him. *State v. Glenner*, 513 A.2d 1361, 1364 (Me.1986). The record discloses that prior to his arraignment the issue of Jacques' mental condition had been raised by a psychiatric report furnished to Jacques' counsel. The second pre-sentence psychiatric evaluation claimed as newly discovered evidence was requested in part because of the language in this initial report. The trial court properly determined that the evidence of Jacques' mental condition at the time of the alleged commission of the criminal charges could have been discovered by the exercise of due diligence.

## F. *Sentencing Proceedings*

Finally, Jacques challenges the legality of the sentence imposed on him. He claims that in the sentencing procedure for the burglary and criminal mischief convictions the trial court improperly considered four counts of harassment by telephone, with which Jacques had been charged and to which he had entered a plea of not guilty and not guilty by reason of insanity. Title 15 M.R.S.A. § 1702 (1980 & Supp.1987) provides that "No person shall be punished for an offense until convicted thereof in a court having jurisdiction of the person and case." *See State v. Blanchard*, 156 Me. 30, 58, 159 A.2d 304, 319 (1960) (defendant could not have violated parole because he had never been convicted).

Here, the record discloses that after Jacques' July 1986 conviction on the burglary and criminal mischief counts he remained free on post-verdict bail until sentencing. Bail was revoked on August 9 because Jacques had been charged with four counts of harassment by telephone, 17-A M.R.S.A. § 506 (1983). Jacques' arraignment and competency hearing for the

---

3. The test is set forth in *State v. Grover*, 518 A.2d 1039, 1042 (Me.1986):
   (1) that the evidence is such as will probably change the result if a new trial is granted, (2) that it has been discovered since the trial, (3) that it could not have been discovered before the trial by the exercise of due diligence, (4) that it is material to the issue, and (5) that it is not merely cumulative or impeaching, unless it is clear that such impeachment would have resulted in a different verdict.

harassment charges and his sentencing for the burglary and criminal mischief convictions were both scheduled on October 16, 1986. Jacques was found competent to stand trial and pleaded not guilty and not guilty by reason of insanity to the harassment charges.

As a part of the sentencing proceedings on the burglary and criminal mischief convictions, the State, over Jacques' objection, presented testimony relating to the pending telephone harassment charges. In announcing the sentences imposed on Jacques for the burglary and criminal mischief convictions, the court stated:

> First of all, really, in terms of the presentation relating to the phone calls which occurred after conviction, before sentencing, it seems to me that there is really abundant, reliable evidence that would point toward Mr. Jacques having made the phone calls. Simply as a question of fact, I'm satisfied beyond a reasonable doubt that, indeed, he's the person who is responsible for the series of phone calls that's been discussed here.
>
> Let me say to you, Mr. Jacques, that if it were a question of sentencing the person who is here today, we have all seen today, this wouldn't be too hard a case. The problem is, of course, sentencing the person who we would consider made these phone calls and consider sentencing a person who committed the burglaries under which you stand convicted....

The court also explicitly considered protection of the telephone harassment victim in imposing sentence: "[I]f I elevate in the equation the concept of rehabilitation, I give up, or I necessarily detract from the question of how comfortable [the telephone harassment victim] is going to feel when she leaves this room today. You have to understand I have to be concerned about her feelings too."

■ When, as here, a defendant's challenge to the sentence imposed is an attack on its legality, and the alleged infirmity appears affirmatively from the record, the claimed illegality may be raised on direct appeal. *State v. Dumont*, 507 A.2d 164,

165–66 (Me.1986); *State v. Farnham*, 479 A.2d 887, 889 (Me.1984).

We have previously recognized the trial court's wide discretion in sentencing proceedings, both in how it obtains information and in the type of information it may consider. *See, e.g., State v. Dumont*, 507 A.2d at 166–68 (factual information regarding defendant's criminal conduct for which he has not been charged); *State v. Farnham*, 479 A.2d at 890–93 (defendant's insistence on trial for limited purpose of determining defendant's repentance, remorse and prospects for rehabilitation); *State v. Plante*, 417 A.2d 991, 996 (Me.1980) (disbelief in defendant's testimony relevant to predicting his response to efforts at rehabilitation); *State v. Samson*, 388 A.2d 60, 67–68 (Me.1978) (partial list of factors to be considered by court in imposing sentence); *see also* 17-A M.R.S.A. § 1257(1)(2) (Supp. 1987) (court shall consider any statements made by prosecutor or victim).

■ Unlike either past convictions, which must be included in a pre-sentence report (M.R.Crim.P. 32(c)(2)), or factual information regarding past criminal conduct for which the defendant has not been charged, as allowed in *State v. Dumont*, 507 A.2d at 167, the State and the defendant have an immediate interest in the resolution of pending charges. If the defendant is convicted of those charges, sentence will then be imposed specifically on that conviction. 15 M.R.S.A. § 1702. In the instant case, Jacques had not been convicted of the telephone harassment charges. Accordingly we hold that in the sentencing process the court cannot consider or rely on charges then pending against the defendant.

Had the charges of telephone harassment filed against Jacques been prosecuted to a conviction prior to the court's imposition of sentence on the conviction of burglary and criminal mischief, the court could have properly consolidated the several convictions for sentencing.

The entry is:

Conviction affirmed, but sentence vacated. Remanded for resentencing by a dif-

ferent justice of the Superior Court in accordance with the opinion herein.

All concurring.