.Orren A. .Moulton,

.Trustee of the Estate of Moses S. Moulton,

*vs.*

Fred H. Perkins.

York.    Opinion June 7, 1917.

*Account in set-off.   Filing specifications.   What accounts may be filed in set-off.*
*Right to set-off where party had, directly or indirectly, transferred his account*
*or note which he claims is a set-off.   General rule applicable*
*in filing accounts in set-off.   Rule where claim alleged*
*to be in set-off has been assigned as collateral.*

The trustee in bankruptcy of the estate of Moses S. Moulton brings this action of assumpsit against defendant for the recovery of seven hundred and sixty-three dollars twelve cents, money had and received of his bankrupt.   The writ is dated April 17, 1916.

A defendant claiming set-off must in general, in point of fact own and control it, so that his suing creditor is, as to that claim, his debtor; and he is bound to prove the same facts in relation to the set-off as though he had brought his action upon·it.

Although the defendant parts with the possession and control of a claim against the plaintiff for a purpose which is contingent, and may thereafter be but temporary, yet while so deprived of it, he cannot set it off.   Therefore the transfer by him, of a demand against the plaintiff to a third person, as collateral security of indebtedness by the defendant to such third person, will prevent the defendant from setting it off in an action against him by the plaintiff.

One may not take advantage of a matter in a set-off, unless it be a cause of action legally subsisting in his favor upon which he could bring and maintain an independent action.

Where a defendant objected to questions to a witness, and he did not set forth the ground of his objections that the contract between the parties in writing was the best evidence, the court's ruling permitting the questions was not erroneous.

Where, without motion to strike out ·testimony objected to on the ground that the·contract between the parties was in writing and the best evidence, the defendant offered the contract, he was not aggrieved by the testimony.

Action of assumpsit by trustee in bankruptcy to recover of defendant the sum of $763,12.   Defendant filed plea of general issue, and also filed an account in set-off.   Specifications were filed by plaintiff, and at conclusion of the evidence the presiding Justice directed a verdict for plaintiff.   Verdict for plaintiff in sum of $763.89.   To ruling of court directing verdict and also as to ruling of court admitting certain evidence, defendant filed exceptions.   Exceptions overruled.

Case stated in opinion.

*Hinckley & Hinckley*, for plaintiff.

*Allen & Willard*, for defendant.

SITTING: SAVAGE, C. J., BIRD, HALEY, HANSON, MADIGAN, JJ.

BIRD, J.   The trustee in bankruptcy of the estate of Moses S. Moulton brings this action of assumpsit against defendant for the recovery of seven hundred and sixty-three dollars twelve cents, money had and received of his bankrupt.   The writ is dated April 17, 1916.

The firm of Hanson & Moulton, consisting of George W. Hanson and the plaintiff's bankrupt, in 1912, purchased of defendant certain timber for which Hanson and his partner Moulton, made and delivered to defendant a promissory note for $5,000.   The note was joint and several commencing "I promise" and signed by each member of the firm, but without mention of the firm.   The note concluded as follows:   "it is hereby agreed that the signers and endorsers of this note waive demand, notice and protest, and guarantee the payment of same when due."   Upon this note, at the date of the bankruptcy hereafter referred to, the amount due was thirty-four hundred sixty-eight dollars and thirteen cents.

The co-partnership was not successful financially and on June 8, 1914, Moses S. Moulton, having no further credit with the banks, induced the defendant long an employe of the firm to execute a demand collateral note, in usual form, of that date to the order of the Springvale National Bank for the sum of $2550 and give as collateral for its payment "64 shares Springvale Aqueduct Co., Certificate No. 17."   The defendant acquired the certificate of stock pledged by the surrender of a certificate for a like number of shares owned by Moses S. Moulton who caused a new certificate therefor to be issued to

Perkins.   The note was discounted at the payee bank by Moses S. Moulton, through his partner George W. Hanson, and the avails were used by the bank in reduction of the indebtedness of Moulton.

On the date of the note defendant and Moses S. Moulton executed in duplicate an agreement, reciting the assignment to defendant of the stock and the issue in his name of a new certificate which Perkins had assigned to the bank as collateral security for the note and agreeing that "said Moses S. Moulton is entitled to and shall have the said shares whenever he shall pay the said note for $2550 and interest thereon."   Moulton paid the interest on the note quarterly in advance and had thus paid it up to June 8, 1915.

Early in June, 1915, the defendant, the bank having given him notice that the note must be paid, asked Moses S. Moulton, for his part of the duplicate agreement and, the latter failing to find it, to execute a written instrument either authorizing Perkins to sell the collateral or, assigning him his interest therein.   From the evidence it is uncertain which.   This request was refused, Moulton stating that he must go into bankruptcy, and that Perkins must take care of the interest as he could not.   Later he gave to defendant his part of the written agreement of June 8, 1914.   June 29, 1914, Moses S. Moulton and his partner Hanson, filed their petition in bankruptcy and on the third day of the following July were adjudged bankrupts both individually and as co-partners.   On the 13th day of the same July the collateral was sold and from the proceeds of the sale, the note and interest paid and a balance of $763.12 handed to defendant. Thereafter, probably on the same day, Perkins announced the sale to Moulton and tendered him the sum of $763.12 saying "you can give me what you have a mind to."   Moulton replied that he was in bankruptcy and " he (defendant) had better take the money and keep it, for they would call for it.   If they didn't he could do what he had a mind to with it."

On the twenty-third day of July, 1915, defendant filed against the estate of the co-partnership of Hanson & Moulton, bankrupts, his claim in the usual form, for the balance due upon the $5,000 note of February 27, 1912, amounting to $3468.13, alleging that no part of the debt had been paid and that there were "no set offs or counter claims to the same." and on the same day the claim was allowed.

On the twenty-eighth day of February, 1916, the defendant executed an absolute assignment of the claim thus proved to the Sanford

National Bank, coupled with an irrevocable power of attorney in the premises. And the same day he revoked a power of attorney theretofore given to attorneys-at-law empowering them to act in relation to said claim. This revocation was filed in the bankruptcy court on the sixth day of March, 1916, as well as the assignment to the Sanford National Bank which, after due notice of its application therefor, was subrogated to the rights of defendant on the sixteenth day of the same month.

Under date of the twenty-eighth day of February, 1916, the Sanford National Bank executed an agreement with defendant, in which after reciting the assignment to it of the claim against "the estate of Hanson & Moulton in bankruptcy "It agrees that the assignment is made as collateral security, for certain notes held by the bank aggregating $500. and that all moneys received under the assignment over the amount sufficient to pay the notes, interest and expenses of collection" shall be paid over to said Fred H. Perkins by the said Sanford National Bank. Perkins to have the right to off set the same." This agreement does not appear to have been filed in the bankruptcy court when the assignment was filed, nor at any subsequent date.

To the action of the assignee in bankruptcy the defendant at the entry term moved for specifications and filed an account in set-off setting up the note for $5000 of February 7, 1912, as the several note of Moses S. Moulton, as an off set, to the amount of $3,468.13. At the next succeeding term, September, 1916, the defendant having pleaded the general issue and plaintiff having filed a replication to the account in set off alleging the note to be that of the firm of Hanson & Moulton and not that of Moses S. Moulton, the case was opened to a jury. At the close of plaintiff's evidence, the defendant offering none, a verdict was directed for plaintiff. The case is here upon exceptions to the admission of evidence and the order directing a verdict.

The bill of exceptions alleges that certain evidence was admitted subject to the objections of defendant to which admission the defendant "excepts because it was immaterial and because the contract between the parties was in writing which was the best evidence." We are in doubt if the defendant insists upon this exception but assuming that he does, we cannot consider the evidence immaterial. During the propounding of the questions and the giving of the answers included in the bill of exceptions, the defendant objected to

two questions, but the ground of his objections are not set forth. There is, therefore, no intimation that the presiding Justice was advised that the rule against secondary evidence was invoked. Consequently no error can be found in the ruling of the court. *Glidden* v. *Dunlap*, 28 Maine, ·379; *Harriman* v. *Sanger*, 67 Maine, 442, 444. Later the defendant offered the contract which was admitted but without motion to strike out the testimony objected to. He does not show that he was aggrieved. *Harriman* v. *Sanger*, 67 Maine, 442, 445.

Upon the exceptions of defendant to the order directing a verdict for the plaintiff, the defendant urges that the surrender by Moses S. Moulton, the bankrupt, to defendant of the agreement by them made at the time, June 8, 1914, the note for $2550 was made and the stock transferred to the latter, was an abandonment by the former of all his rights under the contract and operated as a transfer of all his rights under that contract and to the shares of stock and their avails to defendant. The defendant was anxious to sell the stock which was collateral to the note he signed for the accommodation of the bankrupt that he might with the proceeds pay the note and asked the surrender by the bankrupt of the contract of June 8, 1914. Nothing of moment appears to have been said by either party either prior to or at the time of its delivery to defendant. But the subsequent acts of the parties are significant and cannot be disregarded. Immediately after the sale the defendant brought the sum remaining from the proceeds of the sale after payment of the note and interest—$763.12—and tendered it to the bankrupt, who refused to accept, saying as he testified, "I was in bankruptcy and he had better take the money and keep it, for they would call for it. If they did not, he could do what he had a mind to with it." We conclude that the evidence does not warrant the finding that it was the intention of the parties to transfer to defendant the absolute title to the surplus arising from the sale of the stock.

The defendant, however, says in argument, that admitting for the purpose of argument that Moulton did have rights which·could pass to his trustee in bankruptcy that he then "sets up the further defense that he is entitled to off set against anything that may be found due from him to Moses S. Moulton" the latter's several liability upon the note for $5,000 of February 12, 1912.

The defendant had on the 28th day of February, 1916, assigned not only his claim as allowed, against the firm of Hanson & Moulton, as we have seen but he also assigned "all rights and demands which I now have upon or by virtue of said note against the said George W. Hanson or Moses S. Moulton or their trustee in bankruptcy and all my right, title and claim to all dividends or moneys which shall be coming to me from the estate of said George W. Hanson or Moses S. Moulton or either or both of them or their trustee in bankruptcy." . . . . This effected an absolute and complete assignment and transfer of defendant's claim against Moses S. Moulton individually and we think its character unaffected by the later agreement of the assignee purporting to bear the same date as the agreement of February 28, 1912. It does not re-assign the claim against Moses S. Moulton to defendant nor revoke the power of attorney given the bank by the unconditional agreement. Having thus parted with his title, he could not longer set off his claim against Moses S. Moulton in the suit of his assignee in bankruptcy.

A defendant claiming set-off must in general, in point of fact, own and control it, so that his suing creditor is, as to that claim, his debtor; and he is bound to prove the same facts in relation to the set-off as though he had brought his action upon it. Waterman on Set-off, 2d. Ed., 44, page 48. Although the defendant parts with the possession and control of a claim against the plaintiff for a purpose which is contingent, and may thereafter be but temporary, yet while so deprived of it, he cannot set it off. Therefore the transfer by him, of a demand against the plaintiff to a third person, as collateral security of indebtedness by the defendant to such third person will prevent the defendant from setting it off in an action against him by the plaintiff. Id. 48, page 54.

One may not take advantage of a matter in a set off, unless it be a cause of action legally subsisting in his favor upon which he could bring and maintain an independent action. See *Cutler* v. *Gilbreth*, 53 Maine, 176, 178; *Cutler* v. *Middlesex Factory Co.*, 14 Pick., 483, 484; *Milburn* v. *Guyther*, 8 Gill., 92, 94; 50 Am. Dec., 681, 683, 685; *Annan* v. *Horick*, 4 Gill, 325, 331, 332; 45 Am., Dec., 133, 135, 136; *Varney* v. *Brewster*, 14 N. H., 44, 54; *Weaver* v. *Rogers*, 44 N. H., 112; *Brooks* v. *Jewell*, 14 Vt., 470, 473; *Stephens* v. *Beard*, 4 Wend., 604, 606; *Rawley* v. *Rawley*, 1 Q. B. D., 460, 466; *Charlton* v. *Hill*, 5 C. & P., 147.

The court is of opinion that the set-off claimed by defendant cannot be allowed. Therefore, there was no error in the ruling of the court below in ordering a verdict for the plaintiff.

*Exceptions overruled.*